ERIOUS JOHNSON, JR. OSB #130574
E-mail: *ejohnson.HJLLC@gmail.com*
HARMON JOHNSON LLC
1415 Commercial St. SE
Salem, OR 97302
Phone: (503) 991-8545
Fax:    (503) 622-8545

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **ASHLEY SIMINGTON,** | Civil Case No. 6:19-CV-00960 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| **COOS COUNTY,** and **COOS COUNTY SHERIFF CRAIG ZANNI,** in his individual capacity, **COOS COUNTY SHERIFF'S DEPUTY and SUPERVISING SERGEANT TOBY FLOYD**, in his individual capacity, **CITY OF COQUILLE P.O. DOUGLAS MILLER**, in his individual capacity, **COOS COUNTY SHERIFF'S DEPUTY ZACHARY SMITH**, in his individual capacity, **COOS COUNTY SHERIFF'S DEPUTY CORY DETZLER**, in his individual capacity, **COOS COUNTY SHERIFF'S DEPUTY BRYAN VALENCIA,** in his individual capacity, **CITY OF COQUILLE POLICE CHIEF SCOTT SANDERS**, in his individual capacity**, COQUILLE P.O. TREVOR SANNE**, in his individual capacity and **COQUILLE P.O. CHARLIE CARNAHAN**, in his individual capacity**, | (Civil Rights/42 U.S.C. § 1983/ 1st Amendment, 4th Amendment, 14th Amendment; and 42 U.S.C. § 1985; Intentional Infliction of Emotional Distress; Malicious Prosecution) **DEMAND FOR A JURY TRIAL** |
| Defendants. | |



## I.  INTRODUCTION

1.      Pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985, Plaintiff alleges the deprivation of her rights as protected by state and federal constitutions and statutes. Plaintiff is also alleging violations of Oregon common-law in the form of intentional infliction of emotional distress and malicious prosecution. As such, Plaintiff seeks economic, non-economic and punitive damages and equitable remedies, including attorney fees and litigation expenses/costs, which further includes expert witness fees and expenses in an amount to be determined by a jury at trial.

## II.  JURISDICTION AND VENUE

2.      This court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367 because Plaintiff asserts a cause of action arising under the Constitution, laws, or treaties of the United States. The court has supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1367.

3.      Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

4.      Plaintiff provided defendants notice of her state law claims for money damages on September 23, 2018 and has thereby satisfied the requirements of the Oregon Tort Claims Act, as specified in ORS 30.275(3)(c).

## III.  PARTIES

5.      Plaintiff Ashley Simington ("Simington") is a resident of Coos County, Oregon.

6.      At all material times herein, defendant Coos County ("County") was and is a public body in the State of Oregon responsible under state law for the acts and omission of its agents and other employees, including those whose conduct is at issue herein.



7.      At all material times herein, defendant Craig Zanni ("Zanni") was and is the Coos County Sheriff and is a resident of the State of Oregon. He is sued in his individual capacity.

8.      At all material times herein, defendant Toby Floyd ("Floyd") was and is a Supervisor/Sergeant with the Coos County Sheriff's Office and is a resident of the State of Oregon. He is sued in his individual capacity.

9.      At all material times herein, defendant Douglas Miller ("Miller") was a Sergeant and "Use of Force" Instructor for the Coos County Sheriff's Office and is a resident of the State of Oregon. Defendant Miller is currently a City of Coquille Police Officer. He is sued in his individual capacity.

10.      At all material times herein, defendant Zachary Smith ("Smith") was and is a Coos County Sheriff's Deputy and is a resident of the State of Oregon. He is sued in his individual capacity.

11.      At all material times herein, defendant Corey Detzler ("Detzler") was and is a Coos County Sheriff's Deputy and is a resident of the State of Oregon. He is sued in his individual capacity.

12.      At all material times herein, defendant Bryan Valencia ("Valencia") was and is a Coos County Sheriff's Deputy and is a resident of the State of Oregon. He is sued in his individual capacity.

13.      At all material times herein, defendant Scott Sanders ("Sanders") was and is the City of Coquille Chief of Police and is a resident of the State of Oregon. He is sued in his individual capacity.

14.      At all material times herein, defendant Charlie Carnahan ("Carnahan") was and is a City of Coquille Police Officer and is a resident of the State of Oregon. He is sued in his



individual capacity.

15.    At all material times herein, defendant Trevor Sanne ("Sanne") was and is a City of Coquille Police Officer and is a resident of the State of Oregon. He is sued in his individual capacity.

## IV. FACTS

16.    On July 17, 2018, at or about 11:20 p.m., Mrs. Simington was pulled over for allegedly speeding by Smith and Miller.

17.    At the time, Smith was a "Reserve" Officer and Miller was his "Training" Officer. Miller was also a Sergeant and the "Use of Force" Instructor for the Coos County Sheriff's Office.

18.    Prior to this encounter, Mrs. Simington had "issues" with the Coos County Sheriff's Office.

19.    Her husband was once employed as a Coos County Sheriff's Deputy. Mrs. Simington believed that the Sheriff's Office had recently fired him unfairly and unlawfully.

20.    When Smith and Miller pulled Mrs. Simington over on the night of July 17, 2018—on a dark, lonely road, by herself—she was afraid and concerned for her health and safety. In her mind, the stop was in retaliation for her voicing her displeasure with the treatment of her husband.

21.    When Smith asked for Mrs. Simington's license, she tossed it to him in anxious frustration.  It landed on the ground at his feet—never touching him.

22.    Mrs. Simington's gesture enraged Miller.  He ordered "Ashley" to get out of the car and pick up her license.

23.    Fearing for her health and safety, Mrs. Simington "passively resisted" Miller's



command and declined to exit her vehicle.

24.     This prompted Miller to reach into Mrs. Simington's car, bang her head on the steering wheel hard enough to honk the horn, pry her hands from the steering wheel, reach in her car, unhook her seatbelt, and then snatch her from her car by her hair.

25.     Miller then kicked Mrs. Simington behind her knees. Threw her to the ground. Pinned her face to said ground. Put his knee in her back. Twisted her arms behind her back. Handcuffed her. And tossed her in the backseat of his patrol car.

26.     At no time did Smith attempt to intervene or de-escalate his "Training" Officer's unlawful arrest of, and violently excessive use of force on, Mrs. Simington.

27.     At some point during this exchange, City of Coquille Police Officer Carnahan arrived on scene, and witnessed the incident.

28.     At no time did Carnahan attempt to intervene, or otherwise de-escalate Miller's unlawful arrest of, and violently excessive use of force on, Mrs. Simington.

29.     While Mrs. Simington was being unlawfully held, handcuffed in the patrol car, Coos County Sheriff's Supervisor and Sergeant Floyd, arrived on scene. Rather than instruct Miller or Smith to release Mrs. Simington, Floyd instructed Miller to charge her with violating ORS 162.247, interfering with a police officer; ORS 807.570, failure to carry and present her driver's license, and ORS 162.315, resisting arrest, which Miller did.

30.     Mrs. Simington was unlawfully held in the Coos County Jail for approximately an hour.

31.     Mrs. Simington's "Property Inventory Report" regarding her arrest indicated that she had her Oregon driver's license in her returned property.

////



## THE COVER-UP

32.     On July 23, 2018, the Sheriff's Office announced on its Official Facebook page that Smith was sworn in as a Sheriff's Deputy.

33.     Mrs. Simington exercised her right to warn the public of Smith's complicity in the violations of her Constitutional rights by posting comments to that effect on the Sheriff's Office's Official Facebook page.

34.     Mrs. Simington's comments were removed by Sheriff's "Media and Recruiting Deputy" Valencia.

35.     Miller's citation required Mrs. Simington to answer to his charges at the Coos County Circuit Court on August 8, 2018, at 8:30 a.m.

36.     On August 2, 2018, the Coos County District Attorney sent Mrs. Simington's defense attorney a letter, stating that it was not filing Miller's charges at that time. They did not, however, indicate a time-frame for either allowing Mrs. Simington to refute the charges or dismissing the charges altogether.

37.     On August 28, 2018—wanting to create a record of what was done to her—Mrs. Simington called the City of Coquille Police Department to file a police report regarding the July 17, 2018, incident.

38.     She spoke to City of Coquille Police Officer Sanne, who consulted Police Chief Sanders about Mrs. Simington's request.

39.     Sanne told Mrs. Simington, in sum and substance, that Chief Sanders ordered him not to take her report.

////

////





40.     On or about September 5, 2018, Mrs. Simington filed a small claims action against Miller in the hopes of bringing some sort of public attention to what was done to her.

41.     She paid the Coos County Sheriff's Civil Department $45 to serve the Complaint on Miller.

42.     Detzler, the Deputy responsible for serving Mrs. Simington's Complaint, failed to do so. Rather, he sent it to Coos County's Insurance Carrier.

43.     On or about October 11, 2018, the Coos County District Attorney dismissed the speeding ticket Mrs. Simington was issued on the evening of July 17, 2018.

44.     Every effort Mrs. Simington made to bring public awareness to the treatment she endured was thwarted by the Coos County Sheriff's Office and Coos County District Attorneys Office.

## THE PRIOR INCIDENT

45.     On or about July 9, 2018—unbeknownst to Mrs. Simington and *just over a week prior* to her July 17, 2018, incident—Miller was involved in another excessive use of force incident. This one involving a 78 year-old homeowner, Larry Gudmunson.

46.     On or about July 10, 2018, Coos County Sheriff's Deputy Sgt. Scott Moore received a complaint from Mr. Gudmunson's neighbor, regarding an incident involving him and a Coos County Sheriff's Deputy.

47.     During the initial stages of his investigation, Sgt. Moore "was … informed that Deputy Miller had not promptly informed his supervisor, Sgt. Toby Floyd, of this use of force incident."

////

////



48.     Sgt. Moore interviewed Mr. Gudmunson at his residence. Mr. Gudmunson told him that late on the night of July 9, 2019, he was on his porch shining his flashlight down the road at a "vehicle outside of his residence." He stated that he did not know that it was Miller's vehicle at this time. He observed this vehicle stop in front of his neighbors' home and shined his flashlight at the person getting out of the vehicle. Shortly after this, he noticed someone walking towards him with a flashlight in his hand. This person walked onto Mr. Gudmunson's "side porch." He asked this person what he was doing walking on his deck. At this point, Mr. Gudmunson recognized this person as a police officer but could not tell from which agency. This person, Miller, told Mr. Gudmunson that he was there investigating a report of someone with a gun. Mr. Gudmunson stated that Miller "did not like the flashlight being shined at him." Mr. Gudmunon told Miller that he "was concerned about the welfare of his community and was using his flashlight to see who was out there."

49.     Mr. Gudmunson claimed that Miller then grabbed him by his left shoulder, shoved him against the door on his side porch, grabbed his flashlight and threw it on the ground. Miller then "got in his face yelling at the top of his lungs," telling him that Mr. Gudmunson "was about 2 minutes away from going to jail."

50.     Miller "then grabbed him by his shirt and arm, opened the side porch door, shoved [Mr.] Gudmunson inside and told him to go inside and stay inside."

51.     Sgt. Moore told Mr. Gudmunson that he "had been informed by [Mr. Gudmunson's neighbor] there had been blood on the porch door that morning." Sgt. Moore "commented that [he] did not see any blood there now." Mr. Gudmunson told Sgt. Moore that "he had wiped the blood of[f] earlier today."

////



52.     Sgt. Moore noticed that Mr. Gudmunson had a "small scratch on his left cheek and subdermal blood spots on his right arm." After Mr. Gudmunson removed his t-shirt, Sgt. Moore further noticed "small abrasion type mark on the back of his right shoulder near his shoulder blade. … a bruised area on [his] upper left chest near his shoulder and a darker bruise on [his] left hip."

53.     Sgt. Moore took photographs of Mr. Gudmunson's injuries and his porch.

54.     During this interview, Mr. Gudmunson "expressed his concerns about the Deputy he had the altercation with," "speculat[ing] on the fitness of the Deputy to work in law enforcement."

55.     Based on the above, and after speaking with Miller, Sgt. Moore "[did] not believe that … Miller's use of force, after eliminating [Mr.] Gudmunson as the suspect, me[t] the Objective Reasonableness standard as applied to the 4th Amendment."

56.     Sgt. Moore also "believed that … Miller violated Coos County Sheriff's Department Policy for Use of Force (General Order 4.03), by continuing to use physical force after the justification for the use of force had ended."

57.     Sgt. Moore also "believe[d] … Miller committed the crime of Harassment (ORS 166.065) by continuing to use physical force to control [Mr.] Gudmunson after the justification for the use of force had ended."

58.     Sgt. Moore concluded that the above "breached of policy or procedures … could impair the operations of the Office and/or bring discredit to the Sheriff's Office or its members."

### DISCIPLINE AND "SEPARATION"

59.     Sometime after Mrs. Simington's incident, Miller was pulled from active duty with the Coos County Sheriff's Office.



60.    On or about August 10, 2018, Capt. Daniel L. Looney of the Coos County Sheriff's Office sent Miller a letter regarding his impending Disciplinary Hearing.

61.    In the letter, Capt. Looney informed Miller that there was an investigation "regarding two 'Use of Force' incidents that [Miller] [was] involved in within a two-week period." The first being Mr. Gudmunson (S.O. 18-AI001), which occurred on July 9, 2018, the second being Ms. Simington (S.O. 18-AI002), which occurred on July 17, 2018.

62.    Capt. Looney informed Miller that the investigation of the first incident "indicated … [Miller] did violate both Coos County Sheriff's Office Policies, County Policies, and possible criminal Statutes."

63.    Capt. Looney further informed Miller that as to the first incident, "[t]he discipline that may result could range from suspension (without pay) to termination."

64.    Capt. Looney informed Miller that the investigation of the second incident "indicated … [Miller] did violate Coos County Sheriff's Office Policy."

65.    Capt. Looney further informed Miller that as to the second incident, "[t]he discipline that may result could range from suspension (without pay) to termination."

66.    On or about October 11, 2018, Sheriff Zanni sent a letter to Miller regarding his Discipline Determination (Determination).

67.    Zanni stated in this Determination that "the findings of both investigation … established that [Miller] ha[d], in both instances, violated the Code of Ethics and the principles of this agency."

68.    Zanni added that, since Miller was the Sheriff's Office's "Use of Force" instructor, "it would be reasonable to believe that you knew and understood the requirements for the proper use of force."



69.     Furthermore, Zanni found that "[b[oth investigations showed that [Miller's] use of force were neither reasonable nor within the boundaries of policy."

70.     Moreover, Zanni surmised that the investigation and the facts that emerged established that a recommendation of termination for Miller's actions was appropriate.

71.      Zanni made a conclusion about Ms. Simington's incident, that Miller "should have used [his] experience and training to provide a positive example for a junior officer in how to de-escalate or at least ride out an encounter with an irate motorist who has an axe to grind with the Sheriff's Office."

72.     On or about October 12, 2018, Miller was "separated" from the Coos County Sheriff's Office. But not before receiving a generous severance package and gaining employment with the City of Coquille Police Department.

73.     At no time between the Incident of July 17, 2018 until Miller's "Separation" was Mrs. Simington ever interviewed, or otherwise contacted, by anyone from the Coos County Sheriff's Office about her ordeal.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Unlawful Arrest**
**Fourth Amendment Violation**
**Against Defendants Miller and Floyd**

74.     Plaintiff incorporates paragraphs 1 through 73 as if fully set forth herein.

75.     The acts of defendants described herein were taken under color of state law.

76.     Pursuant to *State v. McNally*, 362 Or 314 (2017); *State v Washington*, 286 Or App 650 (2017); *see also Biberdorf v. Oregon*, 243 F Supp2d 1145 (D Or 2002), defendant Miller did not have probable cause to arrest Mrs. Simington for violating ORS 162.247, interfering with a police officer or ORS 807.570, resisting arrest.



77.    Mrs. Simington also possessed and presented her drivers license to Smith, negating any probable cause to arrest her for ORS 162.315, failing to carry and present her Oregon drivers license.

78.    Miller and Floyd's acts in arresting and charging Mrs. Simington without probable cause that a crime had been committed violated her rights under the Fourth Amendment of the United States Constitution, made applicable to defendants through the Fourteenth Amendment.

79.    As of the filing of this Complaint, the Coos County District Attorney has failed to file defendant Miller's charges. Leading to the inference that his charges lacked probable cause to have been levied.

80.    As a direct and proximate result of Miller and Floyd's unconstitutional acts, Mrs. Simington has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

81.    Mrs. Simington seeks equitable relief in the form of requiring the Coos County Sheriff's Department to undergo use of force training and to adopt the use of body cameras, a public apology and the revocation of Miller and Floyd's Department of Public Safety Standards and Training (DPSST) certifications.

82.    Miller and Floyd's conduct toward Mrs. Simington demonstrated a wanton, reckless and callous indifference to her constitutional rights, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

83.    Mrs. Simington further seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.



**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Excessive Use of Force**
**Fourteenth Amendment Violations**
**Against Defendant Miller**

84.     Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

85.     The acts of defendant described herein were taken under color of state law.

86.     Mrs. Simington has a right to be free from the excessive uses of force upon her person by state actors pursuant to the Fourteenth Amendment of the United States Constitution.

87.     Miller violated Mrs. Simington's right to be free from the excessive use of force upon her person when he forcibly removed her from her car, threw her to the ground, handcuffed her and put her in the back of his patrol car—for a speeding ticket.

88.     As a direct and proximate result of Miller's unconstitutional acts, Mrs. Simington has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

89.     As a direct and proximate result of Miller's unconstitutional acts, Mrs. Simington suffered exacerbation of a pre-existing injury and incurred out-of-pocket medical bills.

90.     Mrs. Simington seeks equitable relief in the form of requiring the Coos County Sheriff's Department to undergo use of force training and to adopt the use of body cameras, a public apology and the revocation of Miller's DPSST certification.

91.     Miller's conduct toward Mrs. Simington demonstrated a wanton, reckless and callous indifference to her constitutional rights, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

////

////



92.     Mrs. Simington seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Freedom of Speech**
**First Amendment Violation**
**Against Defendants Valencia and Zanni in their Individual Capacities**

93.     Plaintiff incorporates paragraphs 1 through 92 as if fully set forth herein.

94.     The acts of defendants described herein were taken under color of state law.

95.     Mrs. Simington has a right to freedom from governmental infringements upon her freedom of speech pursuant to the First Amendment of the United States Constitution.

96.     As described above, Valencia and Zanni unlawfully infringed on Mrs. Simington right to inform the public about her unlawful arrest and the excessive use of force at the hands of the Coos County Sheriff's Department.

97.     As a direct and proximate result of defendants' unlawful acts, Mrs. Simington has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

98.     Valencia and Zanni's conduct toward Mrs. Simington demonstrated a wanton, reckless and callous indifference to her constitutional rights, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

99.     Mrs. Simington seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

////



## FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1985
### Conspiracy
**Against Defendants Zanni, Floyd, Smith, Valencia, Carnahan, Detzler, Sanders and Sanne**

100.    Plaintiff incorporates paragraphs 1 through 99 as if fully set forth herein.

101.    The acts of defendants described herein were taken under color of state law.

102.    By the acts described above, defendants conspired to deprive Mrs. Simington of her right to the equal protections of, or privileges and immunities under, the law.

103.    Each defendant performed an act in furtherance of their intention to deprive Mrs. Simington of her right to the equal protections of, or privileges and immunities under, the law:

    a.  Floyd, Smith, and Carnahan failed to intervene or de-escalate Miller's false arrest and excessive use of force;

    b.  Valencia and Zanni covered up Millers false arrest and excessive use of force on her by deleting her Facebook warnings about the Sheriff's Department's treatment of her;

    c.  Detzler prevented her from gaining information about Millers false arrest and excessive use of force on her by refusing to serve her civil Complaint on Miller; and

    d.  Sanders and Sanne prevented her from documenting Miller's false arrest and excessive use of force on her by refusing to take her report.

104.    As a direct and proximate result of defendants' unlawful acts, Mrs. Simington has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

////

////



105.    Mrs. Simington seeks equitable relief in the form of requiring the Coos County Sheriff's Department to undergo use of force training and to adopt the use of body cameras, a public apology, the resignations of Zanni, Smith, Miller, Detzler, Sanders, Sanne and Valencia from their respective positions, and the revocation of each of their DPSST certifications.

106.    Defendants' concerted conduct toward Mrs. Simington demonstrated a wanton, reckless and callous indifference to her constitutional rights, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

107.    Mrs. Simington seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Municipal Liability**
**Against Defendants Coos County**

108.    Plaintiff incorporates paragraphs 1 through 107 as if fully set forth herein.

109.    The acts of defendant described herein were taken under color of state law.

110.    By the acts described above, Coos County is liable for the acts of its agents and employees.

111.    The Coos County Sheriff's Department has a policy and practice of:

a.    Not removing Officers from active duty who have committed violations of policy, used excessive force on, or committed crimes against, residents.

b.    Providing inadequate "Use of Force" training to its Officers.

c.    Charging individuals who "passively resist" with resisting arrest and interfering with a peace officer, despite the Oregon Supreme Court's holding in *State v. McNally*, 362 Or 314 (2017).



112.   It was this policy that led to Miller not being removed from service after his excessive use of force on Mr. Gudmunson. An incident that was investigated by both a Coose County Sheriff's Department Sergeant and Captain. Both of whom acknowledged that Miller's actions were unconstitutional, unethical and potentially criminal.

113.   The inadequacy in the Coos County Sheriff's "Use of Force" training was evidenced by Miller's unethical, unconstitutional and criminal treatment of Mr. Gudmunson.

114.   The County's deliberate indifference to this inadequacy in training infects the entire Sheriff's Department, evidenced by Smith, Miller's Trainee, and Floyd, Miller's Supervisor, utterly failing to either intervene or de-escalate Miller's unconstitutional and violent treatment of Mrs. Simington.

115.   Zanni ratified these gross failures by hiring Smith as a full time Deputy and not disciplining Floyd at all.

116.   Had Miller not been the Sheriff's Use of Force Instructor or been pulled from active duty after the findings of the Gudmunson incident, the violence and unconstitutional violations visited upon Mrs. Simington—just over a week later—would never have occurred.

117.   As a direct and proximate result of defendants' deliberate indifference to Mrs. Simington constitutional rights, she has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

118.   Mrs. Simington seeks equitable relief in the form of requiring the Coos County Sheriff's Department to undergo use of force training and to adopt the use of body cameras, a public apology, the resignations of Zanni, Smith, Miller and Floyd from their respective positions, and the revocation of each of their DPSST certifications.

////



119.    Defendants' conduct toward Mrs. Simington demonstrated a wanton, reckless and callous indifference to her constitutional rights. This warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

120.    Mrs. Simington also seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

**SIXTH CLAIM FOR RELIEF**
**State Claims**
**Intentional Infliction of Severe Emotional Distress**
**Against Defendant Miller**

121.    Plaintiff incorporates paragraphs 1 through 120 as if fully set forth herein.

122.    By the acts described above, Miller intended to subject Mrs. Simington to severe emotional distress by using excessive force on her and arresting her without probable cause.

123.    As Zanni concluded in his Determination, Miller was aware of Mrs. Simington's "axe to grind" regarding the Sheriff's treatment of her husband.

124.    Miller used the July 17, 2018, incident, to teach Mrs. Simington a lesson about challenging law enforcement and standing up for herself and her husband.

125.    Miller's excessive use of force on, and false arrest of, Mrs. Simington constituted extraordinary transgressions of the bounds of socially tolerable conduct.

126.    Mrs. Simington seeks equitable relief in the form of requiring the Coos County Sheriff's Department to undergo use of force training and to adopt the use of body cameras, a public apology and the revocation of Miller's DPSST certification.

127.    As a direct and proximate result of Miller's unconstitutional acts, Mrs. Simington has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.



128.    Miller's conduct toward Mrs. Simington demonstrated a wanton, reckless and callous indifference to her constitutional rights, health and safety, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

129.    Mrs. Simington seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

**SEVENTH CLAIM FOR RELIEF**
**State Claims**
**Malicious Prosecution**
**Against Defendant Smith, Miller and Floyd**

130.    Plaintiff incorporates paragraphs 1 through 129 as if fully set forth herein.

131.    By the acts described above, Smith, Miller and Floyd intended to subject Mrs. Simington to a malicious prosecution.

132.    Mrs. Simington appeared at the North Bend Circuit Court on August 15, 2018, at 8:00 AM to answer for Smith's speeding ticket.

133.    On or about October 11, 2018, the Coos County District Attorney dismissed that speeding ticket.

134.    Smith's issuance of the speeding ticket against Mrs. Simington was part of a larger conspiracy to violate her constitutional rights, retaliate against her for defending her husband and intimidate her into silence.

135.    The Coos County District Attorney's Office found that Smith's ticket lacked sufficient probable cause to pursue in good faith.

136.    As of the filing of this Complaint, the Coos County District Attorney's Office has also declined to file Miller's charges against Mrs. Simington, indicating the DA's belief that Miller's charges were also malicious.



137.    Miller levied his charges—at the instruction of Floyd—against Mrs. Simington to violate her constitutional rights, retaliate against her for defending her husband and intimidate her into silence.

138.    As a direct and proximate result of Smith, Miller and Floyd's unlawful acts, Mrs. Simington has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

139.    Smith, Miller and Floyd's conduct toward Mrs. Simington demonstrated a wanton, reckless and callous indifference to her constitutional rights, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

140.    Mrs. Simington seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

**WHEREFORE**, Plaintiff Mrs. Simington prays for judgment against defendants as follows:

1.    Economic damages in the form of charges incurred for medical, rehabilitative and other health care services, and prejudgment interest in an amount to be determined at trial

2.    Non-economic damages in the form of pain, mental suffering, emotional distress, humiliation, injury to reputation and inconvenience in an amount to be determined at trial;

3.    All available equitable relief and damages in amounts to be determined at trial, consistent with the claims above against defendants;

4.    Punitive damages consistent with the claims above against defendants in amounts to be determined at trial;



5.      Reasonable attorneys' fees and litigation expenses/costs herein, including expert witness fees and expenses, consistent with the claims above against defendants; and

6.      Grant such other relief as is just and proper.

DATED this 19th day of June, 2019.            HARMON JOHNSON LLC

_/s/ Erious Johnson, Jr._
Erious Johnson, Jr., OSB #130574
E-mail:ejohnson.HJLLC@gmail.com

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL**